**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

DISTRICT OF DELAWARE

Case number *(if known)* ____________ Chapter 11

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

**04/25**

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.**

| | | |
|---|---|---|
| **1.** | **Debtor's name** | BioXcel Therapeutics, Inc. |
| **2.** | **All other names debtor used in the last 8 years**<br>Include any assumed names, trade names and *doing business as* names | N/A |
| **3.** | **Debtor's federal Employer Identification Number** (EIN) | 82-1386754 |
| **4.** | **Debtor's address** | **Principal place of business**<br>555 Long Wharf Drive, 12th Floor, New Haven, CT 06511<br>Number, Street, City, State & ZIP Code<br>New Haven<br>County<br><br>**Mailing address, if different from principal place of business**<br>P.O. Box, Number, Street, City, State & ZIP Code<br><br>**Location of principal assets, if different from principal place of business**<br>Number, Street, City, State & ZIP Code |
| **5.** | **Debtor's website** (URL) | https://www.bioxceltherapeutics.com |
| **6.** | **Type of debtor** | ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br>☐ Partnership (excluding LLP)<br>☐ Other. Specify: |

Debtor BioXcel Therapeutics, Inc. Case number (*if known*) ______
Name

**7. Describe debtor's business**

A. *Check one:*

- ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
- ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
- ☐ Railroad (as defined in 11 U.S.C. § 101(44))
- ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
- ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
- ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
- ☒ None of the above

B. *Check all that apply*

- ☐ Tax-exempt entity (as described in 26 U.S.C. §501)
- ☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)
- ☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes.

3254

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

- ☐ Chapter 7
- ☐ Chapter 9
- ☒ Chapter 11. *Check **all** that apply*:
  - ☐ Debtor’s aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).
  - ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
  - ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.
  - ☐ A plan is being filed with this petition.
  - ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
  - ☒ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the A*ttachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.
  - ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.
- ☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**
If more than 2 cases, attach a separate list.

- ☒ No.
- ☐ Yes.

District ______ When ______ Case number ______
District ______ When ______ Case number ______

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

- ☐ No
- ☒ Yes. See attached Schedule 1

List all cases. If more than 1, attach a separate list

Debtor ______ Relationship ______
District ______ When ______ Case number, if known ______

**11. Why is the case filed in *this district?***

*Check all that apply:*

☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? ______

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other ______

**Where is the property?** ______
Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency ______
Contact name ______
Phone ______

## Statistical and administrative information

**13. Debtor's estimation of available funds** .

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**
(on a consolidated basis)

| | | |
|---|---|---|
| ☐ 1-49 | ☒ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**15. Estimated Assets**
(on a consolidated basis)

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☒ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**16. Estimated liabilities**
(on a consolidated basis)

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☒ $100,000,001 - $500 million | ☐ More than $50 billion |

Debtor BioXcel Therapeutics, Inc. Case number (*if known*)
Name

**Request for Relief, Declaration, and Signatures**

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 08 / 27 / 2026
MM / DD / YYYY

**X** */s/ Vimal Mehta*
Signature of authorized representative of debtor

Vimal Mehta
Printed name

Title Chief Executive Officer

---

**18. Signature of attorney**

**X** */s/ Sean Beach*
Signature of attorney for debtor

Date 08 / 27 / 2026
MM / DD / YYYY

Sean Beach
Printed name

Young Conaway Stargatt & Taylor, LLP
Firm name

1000 N. King Street
Wilmington, DE 19801
Number, Street, City, State & ZIP Code

Contact phone 302-571-6600 Email address sbeach@ycst.com

4070 DE
Bar number and State

## **Schedule 1**

### **Pending Bankruptcy Cases Filed by Affiliated Entities**

On the date hereof, each of the related entities listed below (collectively, the "Debtors"), including the debtor in this chapter 11 case, filed a petition in the United States Bankruptcy Court for the District of Delaware (the "Court") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532. Contemporaneously with the filing of their voluntary petitions, the Debtors filed a motion requesting that the Court jointly administer their chapter 11 cases for administrative purposes only.

| **Entity Name** | **Federal Employer Identification Number (EIN)** |
| --- | --- |
| BioXcel Therapeutics, Inc. | 82-1386754 |
| OnkosXcel Employee Holdings, LLC | 92-3770534 |
| OnkosXcel Therapeutics, LLC | 92-0762522 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BIOXCEL THERAPEUTICS, INC., *et al.*,[1] | Case No. 26-_________ (___) |
| Debtors. | (Joint Administration Requested) |

**Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy Under Chapter 11**

1. If any of the debtor's securities are registered under Section 12 of the Securities Exchange Act of 1934, the SEC file number is 001-38410.

2. The following financial data is the latest available information and refers to the debtor's condition as of the dates noted in the comments below.

| | | |
|---|---|---|
| a. | Total assets | $28,799,000[2] |
| b. | Total debts (including debts listed in 2.c., below) | $104,451,000[3] |
| c. | Debt securities held by more than 500 holders: | 0 |
| d. | Number of shares of preferred stock | 10,000,000 (zero outstanding) |
| e. | Number of shares of common stock | 31,305,499 as of 08/11/2026 |

Comments, if any: ______________________________

3. Brief description of debtor's business: BioXcel Therapeutics, Inc. (Nasdaq: BTAI, "the Company") is a biopharmaceutical company built on artificial intelligence ("AI") to develop transformative medicines in neuroscience. The Company's wholly owned subsidiary, OnkosXcel Therapeutics, is focused on the development of medicines in immuno-oncology. The Company utilizes cutting-edge technology and innovative research to develop high-value therapeutics aimed at transforming patients' lives. The Company developed a proprietary AI platform to reduce therapeutic development costs and potentially accelerate development timelines. The Company's approach

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, are: BioXcel Therapeutics, Inc. (6754), OnkosXcel Therapeutics, LLC (2522), and OnkosXcel Employee Holdings, LLC (0534). The Debtors' address for purposes of service in these Chapter 11 Cases is 555 Long Wharf Drive, 12th Floor New Haven, Connecticut 06511.

[2] This figure reflects Total Assets of BioXcel Therapeutics, Inc. as presented in the June 30, 2026 10-Q and is on a consolidated basis for the Debtors.

[3] This figure reflects Total Debt of BioXcel Therapeutics, Inc. as presented in the June 30, 2026 10-Q and is on a consolidated basis for the Debtors.

leverages existing approved drugs and/or clinically evaluated product candidates together with big data and proprietary machine learning algorithms to identify new therapeutic indications.

4. List the names of any person who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of debtor: Millennium Management LLC owned 1,835,192.00 of common shares as of March 26, 2026 (representing approximately 6.78% voting interest in the Company as of the same date).[4] Armistice Capital Mast Fund Ltd. owned 2,704,751 as of March 26, 2026 (representing approximately 9.99% voting in the Company as of the same date).[5] Oaktree Capital Management LP ("Oaktree") owned 1,946,150 of common shares as of June 30, 2026 (representing approximately 6.22% voting in the Company as August 11, 2026).[6]

---

[4] This figure is based on the Company's 10-K filed on March 27, 2026. As set forth in the 10-K, based on a Schedule 13G/A filed on February 6, 2024 by Integrated Core Strategies (US) LLC, Millenium Management LLC, Millenium Group Management LLC and Israel A. Englander, with (i) each reporting shared voting and dispositive power over 1,833,717 shares of common stock and (ii) each of Millenium Management LLC, Millenium Group Management LLC and Mr. Englander reporting shared voting and dispositive power over an additional 1,475 shares of common stock. Such shares potentially beneficially owned by Millennium Management LLC, Millennium Group Management LLC and Mr. Englander are held by entities subject to voting control and investment discretion by Millennium Management LLC and/or other investment managers that may be controlled by Millennium Group Management LLC (the managing member of Millennium Management LLC) and Mr. Englander (the sole voting trustee of the managing member of Millennium Group Management LLC). The address for (a) Integrated Cores Strategies (US) LLC is c/o Millennium Management LLC, 399 Park Avenue, New York, NY 10022 and (ii) each of Millenium Management LLC and Millenium Group Management LLC is 399 Park Avenue, New York, NY 10022

[5] This figure is based on the Company's 10-K filed on March 27, 2026. As set forth in the 10-K, based on information known to the Company, Armistice Capital Master Fund Ltd. also owns warrants to purchase 5,885,868 shares of our common stock that are exercisable within 60 days of March 26, 2026. The warrants to purchase shares of common stock are directly held by Armistice Capital Master Fund Ltd., a Cayman Islands exempted company ("Master Fund"), and may be deemed to be beneficially owned by: (i) Armistice Capital, LLC ("Armistice Capital"), as the investment manager of Master Fund; and (ii) Steven Boyd, as the Managing Member of Armistice Capital. Armistice Capital has sole voting and dispositive control of the shares reported herein. The address for the stockholder is 510 Madison Avenue, 7th Floor, New York, New York 10022. Warrants held by Armistice Capital are subject to a beneficial ownership limitation of 4.99% or 9.99%, which such limitation restricts the stockholder from exercising that portion of the warrants, as applicable, that would result in the stockholder and its affiliates owning, after exercise, a number of shares of common stock in excess of the beneficial ownership limitation.

[6] Oaktree's holdings are based on Oaktree's 13F filed on August 14, 2026.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BIOXCEL THERAPEUTICS, INC. *et al.*,[1] | Case No. 26-_________ (___) |
| Debtors. | (Joint Administration Requested) |

## CONSOLIDATED CORPORATE OWNERSHIP STATEMENT AND LIST OF EQUITY INTEREST HOLDERS PURSUANT TO FED. R. BANKR. P. 1007 AND 7007.1

Pursuant to Rules 1007 and 7007.1 of the Federal Rules of Bankruptcy Procedure, the debtors and debtors in possession in the above-captioned cases (each, a "Debtor"), hereby state as follows:

1. Debtor BioXcel Therapeutics, Inc. ("BioXcel") is a publicly traded company. To BioXcel's knowledge, no corporation owns, directly or indirectly, 10% or more of BioXcel's common stock.[2]

2. Debtor OnkosXcel Therapeutics, LLC is 100% owned by BioXcel.

3. A list of Debtor OkosXcel Employee Holdings, LLC equity interest holders and the nature their equity interests is attached hereto as **Exhibit A**.

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, are: BioXcel Therapeutics, Inc. (6754), OnkosXcel Therapeutics, LLC (2522), and OnkosXcel Employee Holdings, LLC (0534). The Debtors' address for purposes of service in these Chapter 11 Cases is 555 Long Wharf Drive, 12th Floor, New Haven, Connecticut 06511.

[2] BioXcel is authorized to issue preferred stock, but no preferred stock is outstanding. BioXcel is unable to provide further information other than what is currently publicly disclosed in BioXcel's filings with the SEC, and by separate motion filed contemporaneously herewith, the Debtors are requesting a modification of the requirement under Rule 1007 to file a list of all BioXcel's equity security holders.

**Exhibit A**

**Equity Holders of OkosXcel Employee Holdings, LLC**

| **Name and Address**[1] | **Common Units** | **Profits Units** | **Managing Member Units** |
|---|---|---|---|
| BioXcel Therapeutics, Inc.<br>555 Long Wharf Drive, 12th Floor,<br>New Haven, Connecticut 06511 | 7,825 | - | 1 |
| Vimal Mehta | 100 | 400 | - |
| Vincent O'Neill | 26 | 155 | - |
| Richard Steinhart | 25 | 100 | - |
| Javier Rodriguez | 50 | 50 | - |
| Ankush Sethi | 30 | 120 | - |
| Veena Agarwal | - | 13 | - |
| Pascal Borderies | - | 18 | - |
| Rashmi Deshpande | - | 45 | - |
| Scott Cerulli | - | 9 | - |
| Vasu Kakumnu | - | 20 | - |
| Vidya Swamination | - | 20 | - |
| Ranjeeta Kanojia | - | 15 | - |
| Chetan Lathia | - | 11 | - |
| Erik Kopp | - | 10 | - |
| Brennan Doyle | - | 6 | - |
| Brian McKenna | - | 15 | - |
| Lily Zagami | - | 10 | - |
| Amir Hafeez | - | 10 | - |
| Dawn Newman | - | 2 | - |
| Sherry Kupchick | - | 4 | - |
| Moses Donkor | - | 7 | - |
| Michel Duval | - | 7 | - |
| Nate Lavertu | 15 | - | - |
| Paul Vitola | 6 | - | - |
| Pascal Borderies | 2 | - | - |

1 Debtor BioXcel is the only non-individual that owns an interest in Debtor OkosXcel Employee Holdings, LLC. The addresses of the remaining individuals in the chart are on file with the Debtors.

**Fill in this information to identify the case:**

Debtor name BioXcel Therapeutics, Inc. et al.

United States Bankruptcy Court for the: District of Delaware (State)

Case number (If known):

☐ Check if this is an amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

**A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.**

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | **Latham & Watkins LLP**<br>200 Clarendon St<br>Boston, MA 19170 | Attn: Legal Dept | Professional Services | CU | | | **$9,907,801.93** |
| 2 | **Cognitive Research Corporation**<br>3030 E Cactus Road<br>Suite 101<br>Phoenix, AZ 85032 | Attn: Legal Dept<br>info@cogress.com | Trade | CUD | | | **$2,183,134.24** |
| 3 | **Clark Smith Villazor LLP**<br>666 Third Avenue<br>21st Floor<br>New York, NY 10017 | Attn: Legal Dept<br>F: 212-377-0868<br>info@csvllp.com | Professional Services | CUD | | | **$1,944,207.34** |
| 4 | **ARx LLC**<br>400 Seaks Run Road<br>Buidling 5<br>Glen Rock, PA 17327 | Attn: Legal Dept<br>marketing@arxpharma.com | Trade | CU | | | **$383,657.00** |
| 5 | **HaystackID, LLC**<br>200 W. Jackson Blvd<br>Suite 250<br>Chicago, IL 60606 | Attn: Legal Dept<br>info@haystackid.com | Trade | CU | | | **$175,541.79** |
| 6 | **Ernst & Young U.S. LLP**<br>200 Plaza Drive<br>Suite 2222<br>Secaucus, NJ 07094 | Attn: Legal Dept<br>F: 201-867-0457 | Professional Services | CU | | | **$100,000.00** |
| 7 | **ProPharma Group LLC**<br>8717 W 110th Street<br>Suite 300<br>Overland Park, KS 66210 | Attn: Legal Dept<br>info@propharmagroup.com | Trade | CU | | | **$86,220.31** |
| 8 | **Datasite LLC**<br>733 S. Marquette Ave.<br>Suite 600<br>Minneapolis, MN 55402 | Attn: Legal Dept<br>datasitelegal@datasite.com;<br>info@datasite.com | Trade | CU | | | **$83,967.55** |

Debtor Name **BioXcel Therapeutics, Inc. et al.** Case Number ______________

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9 | **Yale University**<br>2 Whitney Ave, Ste 330<br>New Haven, CT 06520 | Attn: Legal Dept<br>F: 203 436-9775 | Trade | CU | | | **$66,981.20** |
| 10 | **Russo Partners LLC**<br>215 Park Avenue South<br>Suite 1905<br>New York, NY 10010 | Attn: Legal Dept | Professional Services | CU | | | **$65,608.56** |
| 11 | **NorthEast BioAnalytical Laboratories LLC**<br>925 Sherman Avenue<br>Hamden, CT 06514 | Attn: Legal Dept<br>sales@nebiolab.com | Trade | CU | | | **$60,927.00** |
| 12 | **Dana-Farber/Mass General Brigham Cancer Care, Inc.**<br>450 Brookline Ave. BP2102<br>Boston, MA 02215 | Attn: Legal Dept<br>F: 617-632-5175 | Trade | CU | | | **$57,570.00** |
| 13 | **Sys-Tech Solutions, Inc.**<br>214 Carnegie Center Dr.<br>Suite 101<br>Princeton, NJ 08540 | Attn: Legal Dept<br>F: 203-724-1088<br>info@systech-solutions.com | Trade | CU | | | **$45,000.00** |
| 14 | **Worldwide Clinical Trials, Inc.**<br>600 Park Offices Drive<br>Suite 200, Research Triangle Park<br>Durham, NC 27709 | Attn: Legal Dept<br>info@worldwide.com | Trade | CU | | | **$45,000.00** |
| 15 | **Woven Data, Inc.**<br>1 Daniel Burnham Ct<br>Unit624<br>San Francisco, CA 94109 | Attn: Legal Dept<br>sales@wovendata.com | Trade | CU | | | **$45,000.00** |
| 16 | **Sterne, Kessler, Goldstein & Fox PLLC.**<br>1100 New York Ave, NW<br>Washington, DC 20005 | Attn: Legal Dept<br>F: 202-371-2540<br>kdoughty@sternekessler.com | Professional Services | CU | | | **$40,351.45** |
| 17 | **Insight Direct USA, Inc**<br>6820 S Harl Ave<br>Tempe, AZ 85283 | Attn: Legal Dept<br>F: 480-760-8958; 866-610-6573 | Trade | CU | | | **$37,756.26** |
| 18 | **Berger McDermott, LLC**<br>1105 N. Market Street<br>11th Floor<br>Wilmington, DE 19801 | Attn: Legal Dept<br>F: 302-655-1131 | Professional Services | CU | | | **$37,285.19** |
| 19 | **Hogan Lovells US LLP**<br>555 13th St NW<br>Washington, DC 20004 | Attn: Legal Dept<br>F: 202-637-5910 | Professional Services | CU | | | **$36,022.40** |
| 20 | **Proserveco LLC**<br>3033 Midvale Ave<br>Philadelphia, PA 19129 | Attn: Legal Dept | Trade | CU | | | **$33,600.00** |

Debtor Name **BioXcel Therapeutics, Inc. et al.** Case Number ______________

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 21 | **AON Consulting**<br>The Leadenhall Bldg<br>122 Leadenhall St<br>London, EC3V 4AN, England | Attn: Legal Dept<br>F: 44-0-20-7621-151 | Professional Services | CU | | | **$31,000.00** |
| 22 | **Biotech Value Advisors**<br>201 King of Prussia Road<br>Suite 650<br>Radnor, PA 19087 | Attn: Legal Dept<br>contactus@biotechvalue.com | Trade | CU | | | **$30,000.00** |
| 23 | **Diligent Corporation**<br>1111 19th Street NW<br>9th floor<br>Washington, DC 20036 | Attn: Legal Dept<br>communitysupport@diligent.com | Trade | CU | | | **$29,555.84** |
| 24 | **Conexus Solutions, Inc.**<br>1060 State Rd<br>Suite 102<br>Princeton, NJ 08540 | Attn: Legal Dept<br>info@cnxsi.com | Trade | CU | | | **$29,070.00** |
| 25 | **Priori Legal, Inc.**<br>300 West 57th Street<br>40th Floor<br>New York, NY 10019 | Attn: Legal Dept<br>hello@priorilegal.com;<br>admin@priorilegal.com | Professional Services | CU | | | **$28,621.25** |
| 26 | **Toppan Merrill LLC**<br>1501 Energy Park Drive<br>St Paul, MN 55108 | Attn: Legal Dept<br>info@toppanmerrill.com | Professional Services | CU | | | **$22,098.80** |
| 27 | **Georgetown University Clinical Trials**<br>2121 Wisconsin Ave<br>Suite 400<br>Washington, DC 20007 | Attn: Legal Dept<br>es1310@georgetown.edu;<br>mo865@georgetown.edu;<br>mo865@georgetown.edu | Trade | CU | | | **$21,709.00** |
| 28 | **Jackson Lewis P.C.**<br>1133 Westchester Ave<br>Suite S125<br>West Harrison, NY 10604 | Attn: Legal Dept<br>F: 518-242-7730 | Professional Services | CU | | | **$21,573.28** |
| 29 | **Flex Databases US Inc**<br>256 Bunn Drive<br>Suite 5<br>Princeton, NJ 08540 | Attn: Legal Dept | Trade | CU | | | **$20,500.00** |
| 30 | **Intrepid Health Inc.**<br>35 South Main St.<br>Hanover, NH 03755 | Attn: Legal Dept | Trade | CU | | | **$17,500.00** |

**UNANIMOUS WRITTEN CONSENT OF**
**THE STRATEGIC PROCESS COMMITTEE OF BIOXCEL THERAPEUTICS, INC.**

August 26, 2026

The undersigned, being all of the members of the Strategic Process Committee (the "Strategic Process Committee") of BioXcel Therapeutics, Inc., a Delaware corporation (the "Company"), hereby consent to and adopt the following resolutions, pursuant to the Amended and Restated By-Laws of the Company and Section 141(f) of the General Corporation Law of the State of Delaware, and direct that this written consent be filed with the minutes of the proceedings of the Strategic Process Committee and the board of directors of the Company:

**WHEREAS**, on July 1, 2026, the members of the board of directors (the "Board") of the Company established the Strategic Process Committee, appointing David Mack as the initial member of the Strategic Process Committee;

**WHEREAS**, on August 12, 2026, the Board adopted resolutions appointing Susan Atkins as a member of the Strategic Process Committee;

**WHEREAS**, on August 26, 2026, the Board adopted resolutions amending the scope of the responsibility, power and authority of the Strategic Process Committee and adopted an Amended and Restated Charter (the "A&R Charter") of the Strategic Process Committee;

**WHEREAS**, pursuant to the A&R Charter, the Strategic Process Committee has the full and exclusive authority, power and responsibility, in its reasonable discretion, to act on behalf of the Board and shall have the power to make any determination on behalf of the Company in respect of its Purpose (as defined in the A&R Charter), including, without limitation, to evaluate, negotiate, pursue, approve, oversee, authorize, coordinate and implement (i) any proposals for obtaining additional financing and entering into strategic transactions, including, without limitation, the incurrence of new indebtedness (including any debtor-in-possession financing), other debt or equity financing transactions, the sale of all or any part of the Company or its assets (including its subsidiaries or any interest the Company owns in such subsidiaries), or the reorganization of the Company pursuant to the Bankruptcy Code (as hereinafter defined), including but not limited to negotiating, approving, authorizing and implementing any agreements or definitive documents in connection with the foregoing, (ii) the sale of all or any part of the Company or its assets (including its subsidiaries or any interest the Company owns in such subsidiaries), (iii) any marketing or auction process for the sale of all or any part of the Company or its assets (including its subsidiaries or any interest the Company owns in such subsidiaries), and to select any qualified, successful, backup or other bidder in connection with any such process, (iv) any potential strategic alternatives for the further restructuring of the Company, including the commencement of an insolvency proceeding under the Bankruptcy Code, and taking acts with respect to the sale, restructuring, liquidation, or other strategic transaction in connection therewith, including but not limited to negotiating, approving, authorizing and implementing any agreements or definitive documents in connection with the foregoing, (v) employee-related programs, plans, and initiatives, including, without limitation, key employee incentive plans, key employee retention programs, and other compensation, benefits, and talent management initiatives designed to attract, motivate, develop,

and retain employees, and (vi) any other matters or actions as may be necessary or advisable to effectuate any of the foregoing (including the selection and retention of the Company's professionals with respect to any such transaction);

**WHEREAS**, pursuant to the A&R Charter, the Strategic Process Committee also has the full and exclusive authority, power and responsibility to evaluate, review, discuss with management and make a determination, including the authorization or approval thereof, with respect to (i) any issues pertaining to the Company's strategies in any chapter 11 proceeding to ensure that they are aligned with the Company's restructuring plans and objectives, and (ii) any issues pertaining to public communications and filings in connection with any chapter 11 proceeding in respect of the Company;

**WHEREAS**, on August 26, 2026, the Board adopted resolutions appointing Samir Saleem of MERU, LLC ("MERU") as the Chief Restructuring Officer of the Company (the "CRO");

**WHEREAS**, the Strategic Process Committee has, with the assistance of management, legal advisors, financial advisors, and investment bankers of the Company, reviewed and considered the financial and operational condition of the Company and the Company's business on the date hereof, including the historical performance of the Company, the assets of the Company, the current and long-term liabilities of the Company, the market for the Company's assets, credit market conditions, and macroeconomic conditions impacting the Company, and received the recommendations of management and the legal and financial advisors of the Company as to the relative risks and benefits of certain strategic alternatives available to the Company, including pursuing a bankruptcy under chapter 11 of title 11 of the United States Code, 11 U. S. C. §§ 101 et seq. (the "Bankruptcy Code");

**WHEREAS**, the Strategic Process Committee has determined that it is in the best interests of the Company and the Company's creditors, stockholders, and other parties in interest to commence a case under the Bankruptcy Code;

**WHEREAS**, the Strategic Process Committee desires to incentivize certain of its key employees to continue their employment with the Company through the Chapter 11 Case (as hereinafter defined) through the implementation of that certain key employee incentive program (the "KEIP") and that certain key employee retention program (the "KERP" and together with the KEIP, collectively, the "Retention Agreements"); and

**WHEREAS**, the Strategic Process Committee has reviewed and considered the proposed form of Retention Agreements and following discussions with management and advisors to the Company, has determined that it is in the best interests of the Company to approve and authorize the KEIP/KERP and the Retention Agreements.

**NOW, THEREFORE, BE IT**:

*Approval of Chapter 11 Case*

**RESOLVED**, that, in the judgment of the Strategic Process Committee, after due consultation with management and the legal and financial advisors of the Company, it is desirable and in the best interests of the Company and its stakeholders, creditors, and other parties in interest that the Company files or causes to be filed a voluntary petition for relief (the "Bankruptcy Petition") under the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), thereby commencing a case (the "Chapter 11 Case") under the provisions of the Bankruptcy Code; and it is further

**RESOLVED**, that the form, terms, and provisions of, the execution, delivery, and filing of, and the performance of the transactions and obligations contemplated by the Bankruptcy Petition be, and they hereby are, authorized, approved, and adopted in all respects and the CRO and any other authorized person or officer of the Company (each, an "Authorized Officer" and collectively, the "Authorized Officers") be, and each of them hereby is, acting singly or in any combination, authorized, directed, and empowered, in the name and on behalf of the Company, (i) to execute and verify the Bankruptcy Petition and all documents ancillary thereto, to cause such Bankruptcy Petition to be filed in the Bankruptcy Court, and to make or cause to be made prior to the execution thereof any modifications to such Bankruptcy Petition or ancillary documents, and (ii) to execute, verify, and file or cause to be filed all other petitions, schedules, lists, motions, pleadings, applications, declarations, affidavits, and other papers or documents necessary, appropriate, advisable, or desirable in connection with the foregoing, with such changes, additions, and modifications thereto as the Authorized Officers executing the same shall approve, the taking or execution thereof by the Authorized Officers being conclusive evidence of the approval thereof by the Authorized Officers and the Company; and it is further

*Retention of Advisors*

**RESOLVED**, that, in connection with the Chapter 11 Case, any Authorized Officer, in each case, acting singly or in any combination, be, and each hereby is, authorized, directed, and empowered, with full power of delegation, in the name and on behalf of the Company, to employ and retain all assistance by legal counsel, accountants, financial advisors, investment bankers, and other professionals which such Authorized Officer deems necessary, appropriate, advisable, or desirable in connection with the Chapter 11 Case and the transactions contemplated thereby (such acts to be conclusive evidence that such Authorized Officer deemed the same to meet such standard); and it is further

**RESOLVED**, that the law firm of Cooley LLP be, and hereby is, employed under a general retainer to render legal services to, and authorized, directed, and empowered to represent, the Company as lead bankruptcy counsel in connection with the Chapter 11 Case and any other related matters in connection therewith, subject to approval of the Bankruptcy Court, and assist the Company in carrying out the Company's duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights, including the preparation of pleadings and filings in the Chapter 11 Case, and in connection therewith, the Authorized Officers be, and each of them, acting singly or in any combination, with power of delegation, hereby is, authorized, directed, and empowered, on behalf of and in the name of the Company to execute appropriate retention

agreements, pay appropriate retainers prior to and immediately upon the filing of the Chapter 11 Case, and to cause to be filed an appropriate application for authority to retain the services of Cooley LLP; and it is further

**RESOLVED**, that the law firm of Young Conaway Stargatt & Taylor, LLP ("Young Conaway") be, and hereby is, employed under a general retainer to render legal services to, and authorized, directed, and empowered to represent, the Company as Delaware bankruptcy counsel in connection with the Chapter 11 Case and any other related matters in connection therewith, subject to approval of the Bankruptcy Court, and assist the Company in carrying out the Company's duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights, including the preparation of pleadings and filings in the Chapter 11 Case, and in connection therewith, the Authorized Officers be, and each of them, acting singly or in any combination, with power of delegation, hereby is, authorized, directed, and empowered, on behalf of and in the name of the Company to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Chapter 11 Case, and to cause to be filed an appropriate application for authority to retain the services of Young Conaway; and it is further

**RESOLVED**, that the firm of MERU be, and hereby is, authorized, directed, and empowered to act as financial advisor and provide the Company with Samir Saleem as CRO and support personnel to represent and assist the Company in carrying out the Company's duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and obligations, and in connection therewith, the Authorized Officers be, and each of them, acting singly or in any combination, with power of delegation, hereby is, authorized, directed, and empowered to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application to retain the services of MERU; and it is further

**RESOLVED**, that the firm of MTS Health Partners, L.P. ("MTS") be, and hereby is, authorized, directed, and empowered to serve as investment banker to assist the Company with a restructuring or sale of the Company's assets and in carrying out the Company's duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations; and in connection therewith, the Authorized Officers be, and each of them, acting singly or in any combination, with power of delegation, hereby is, authorized, directed, and empowered, on behalf of and in the name of the Company to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Chapter 11 Case, and to cause to be filed an appropriate application for authority to retain the services of MTS; and it is further

**RESOLVED**, that the firm of Stretto, Inc. ("Stretto") be, and hereby is, authorized, directed, and empowered to (i) serve as the notices, claims, solicitation, and balloting agent, (ii) serve as administrative advisor to assist in the preparation of each Company's statement of financial affairs and schedules of assets and liabilities, and (iii) assist the Company in carrying out the Company's duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations, and in connection therewith, the Authorized Officers be, and each of them, acting singly or in any combination, with power of delegation, hereby is, authorized, directed, and empowered, on behalf of and in the name of the Company to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the

Chapter 11 Case, and to cause to be filed an appropriate application for authority to retain the services of Stretto; and it is further

**RESOLVED**, that each of the aforementioned retained advisors of the Company is hereby authorized to take any and all actions necessary, appropriate, advisable, or desirable to advance the Company's rights and obligations and facilitate the commencement of the Chapter 11 Case; and it is further

**RESOLVED**, that each Authorized Officer be, and hereby is, authorized, directed, and empowered, on behalf of and in the name of the Company, to retain such other professionals as they deem appropriate during the course of the Chapter 11 Case; and it is further

**RESOLVED**, that any person dealing with each Authorized Officer in connection with any of the foregoing matters shall be conclusively entitled to rely upon the authority of such Authorized Officer and by such Authorized Officer's execution of any instrument, certificate, notice or document, the same shall be a valid and binding obligation of the Company enforceable in accordance with its terms; and it is further

**RESOLVED**, that each Authorized Person be, and hereby is, authorized, directed, and empowered, on behalf of and in the name of the Company, to pay all necessary and reasonable fees and expenses incurred in connection with the transactions contemplated by these resolutions; and it is further

*Approval of Stalking Horse Asset Purchase Agreement and Related Transactions*

**RESOLVED,** that it is in the best interests of the Company to enter into the proposed Asset Purchase Agreement (together, with all exhibits, schedules, and other attachments thereto or incorporated therein by reference, the "Stalking Horse APA"), by and among the Company, OnkosXcel Therapeutics, LLC, and OnkosXcel Employee Holdings, LLC, as sellers, and Teva Pharmaceutical International GmbH, as purchaser (the "Stalking Horse Bidder"), on the terms and conditions substantially similar to those set forth in the form of Stalking Horse APA; and it is further

**RESOLVED**, that the form, terms, and provisions of the Stalking Horse APA, and any other agreements, instruments, documents, or certificates required to effect the purposes of the Stalking Horse APA, are authorized and approved, with such changes, additions, and modifications thereto as the Authorized Officers executing the same shall approve, the taking or execution thereof by the Authorized Officers being conclusive evidence of the approval thereof by the Authorized Officers and the Company; and it is further

**RESOLVED**, that each Authorized Officer be, and each of them hereby is, acting singly or in any combination, authorized, directed, and empowered, in the name and on behalf of the Company to enter into, execute, and deliver the Stalking Horse APA with the Stalking Horse Bidder, subject to the Company receiving higher or better offers through a court-supervised auction process pursuant to section 363 of the Bankruptcy Code; and it is further

**RESOLVED**, that each Authorized Officer be, and each of them hereby is, acting singly or in any combination, authorized, directed, and empowered, in the name and on behalf of the Company to execute and file all schedules, lists, and other motions, papers, or documents, and any other agreements or amendments related thereto or required thereby in respect of the sales of certain or all of the assets of the Company pursuant to sections 105, 363, and 365 of the Bankruptcy Code (the "Section 363 Sale"), and to take any and all action that they deem necessary, appropriate, advisable, or desirable to effect the Section 363 Sale, the taking or execution thereof by the Authorized Officers being conclusive evidence of the approval and determination thereof by the Authorized Officers and the Company; and it is further

*Approval of Debtor-in-Possession Credit Agreement*

**RESOLVED**, that any Authorized Officer, in each case, acting singly or in any combination, be, and each hereby is, authorized to execute, deliver and perform, or cause to be executed, delivered and performed, as applicable from time to time, in the name of and on behalf of the Company, that certain Super-Priority Senior Secured Priming Debtor-in-Possession Credit Agreement and Guaranty (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "DIP Credit Agreement" and, together with any other documents related to the debtor-in-possession financing, each, a "DIP Loan Document" and collectively, the "DIP Loan Documents"), by and among the Company, in its capacity as borrower, the Guarantors (as defined in the DIP Loan Documents) party thereto, and the administrative agent and lenders party thereto, on substantially the terms discussed and considered by the Strategic Process Committee, including, without limitation, any agreements, instruments, questionnaires, papers or writings, as such Authorized Officers determine are necessary, convenient, advisable, appropriate or desirable to effect the execution, delivery and performance of the DIP Credit Agreement and the transactions contemplated thereunder as intended by these resolutions, including but not limited to, any UCC financing statements and other instruments, stock powers, bond powers, unit powers, powers of attorney, side letters, notary letters, allonges, waivers, documents, certificates, consents, assignments, notices, affidavits, certificates of officers (including secretary's certificates) and other certificates, control agreements, intellectual property grants, guarantees, pledge agreements and other pledge documents, security agreements and other security documents, ratification agreements and agreements contemplated thereby or executed and delivered in connection therewith, in each case, with such changes, additions, modifications, and terms as any such Authorized Officers executing the DIP Documents shall approve, with such Authorized Officer's execution thereof to be deemed conclusive evidence of such approval, and in each case and in connection therewith, with all amendments, amendments and restatements, supplements, renewals, extensions, modifications, substitutions and replacements thereof and each other agreement now existing or hereafter created providing collateral security for payment or performance of the obligations thereunder; and it is further

**RESOLVED**, that each Authorized Officer be, and each of them hereby is, acting singly or in any combination, authorized, directed, and empowered, in the name and on behalf of the Company, to assign, hypothecate, set over, grant security interests in or grant a continuing security interest in, mortgage or pledge any or all of the assets and properties of the Company, real, personal or mixed, tangible or intangible, now owned or hereafter acquired, and all proceeds of the

foregoing, to the DIP Agent (as defined in the DIP Documents) as security for the obligations under the DIP Credit Agreement and the other DIP Loan Documents; and it is further

**RESOLVED**, that, in connection with the Bankruptcy Case, each Authorized Officer be, and each of them hereby is, acting singly or in any combination, authorized, directed, and empowered, in the name and on behalf of the Company, as a debtor and debtor in possession, to negotiate, execute, and deliver agreements for the use of cash collateral in connection with the Bankruptcy Case, which agreement(s) may require the Company to acknowledge the debt and liens of existing loans, grant liens, and pay interest to the Company's existing lender(s) on terms substantially similar to those described or provided to the Strategic Process Committee; and in connection therewith, each Authorized Officer is hereby authorized and directed to execute appropriate agreements and related ancillary documents; and it is further

**RESOLVED**, that, in connection with the Bankruptcy Case, each Authorized Officer be, and each of them hereby is, acting singly or in any combination, authorized, directed, and empowered, in the name and on behalf of the Company, as a debtor and debtor in possession, to (i) negotiate, execute, and deliver agreements for postpetition financing on terms substantially similar to those described or provided to the Strategic Process Committee; (ii) pledge and grant liens on the Company's assets as may be contemplated by or required under the terms of such postpetition financing; or (iii) execute, deliver, verify, and file, as applicable, or cause to be executed, delivered, verified, or filed, and to amend, supplement, or otherwise modify from time to time, all necessary and appropriate documents, including, without limitation, affidavits, schedules, motions, pleadings, and other documents, agreements, and papers, postpetition financing documents, and loan agreements (including any ancillary documents thereto) in such form as such Authorized Officers may approve, and to take any and all actions that such Authorized Officers determine advisable, necessary, or appropriate in connection with any postpetition financing or any cash collateral usage contemplated hereby or thereby (such approval and the approval of the Strategic Process Committee to be conclusively evidenced by the execution thereof or the taking of such action by such Authorized Officers); and it is further

*Approval of KERP/KEIP and Retention Agreements*

**RESOLVED**, that it is in the best interests of the Company to enter into the proposed KEIP/KERP and Retention Agreements (together with all exhibits, schedules, and other attachments thereto or incorporated therein by reference, the "Retention Documentation"), on the terms and conditions substantially similar to those presented to the Strategic Process Committee; and it is further

**RESOLVED**, that all payments under the Retention Documentation shall be subject to applicable federal, state, and local tax withholding and reporting requirements; and it is further

**RESOLVED**, that the form, terms, and provisions of the Retention Agreements, and any other agreements, instruments, documents, or certificates required to effect the purposes of the Retention Agreements, are authorized and approved, with such changes, additions, and modifications thereto as the Authorized Officers executing the same shall approve, the taking or execution thereof by the Authorized Officers being conclusive evidence of the approval thereof by the Authorized Officers and the Company; and it is further

**RESOLVED**, that each Authorized Officer be, and each of them hereby is, acting singly or in any combination, authorized, directed, and empowered, in the name and on behalf of the Company to enter into, execute, and deliver the Retention Agreements, and in connection therewith, each Authorized Officer is hereby authorized and directed to execute any necessary and appropriate Retention Documentation and related ancillary documents; and it is further

**RESOLVED**, that each Authorized Officer be, and each of them hereby is, acting singly or in any combination, authorized, directed, and empowered, in the name and on behalf of the Company to prepare, negotiate, execute, file, and deliver, individual award agreements or retention letters to each participant, substantially consistent with the terms approved in the Retention Agreements and Retention Documentation, and execute and deliver all documents, instruments, certificates, and agreements, and take all such further actions that they deem necessary, appropriate, advisable, or desirable to effect the KEIP/KERP and the Retention Documentation, the taking or execution thereof by the Authorized Officers being conclusive evidence of the approval and determination thereof by the Authorized Officers and the Company; and it is further

*General Authorizations*

**RESOLVED**, that all documents, agreements, and instruments executed and delivered, and any and all acts, actions, and transactions relating to the matters contemplated by the resolutions herein done in the name of and on behalf of the Company, which acts would have been approved by the resolutions herein except that such actions were taken before these resolutions were approved and adopted, are hereby in all respects approved and ratified; and it is further

**RESOLVED**, that the Authorized Officers be, and hereby are, authorized, directed, and empowered, on behalf of and in the name of the Company, to perform the obligations of the Company under the Bankruptcy Code, with all such actions to be performed in such manner, and all such certificates, instruments, guaranties, notices, and documents to be executed and delivered in such form, as the Authorized Officers performing or executing the same shall approve, the taking or execution thereof by the Authorized Officers being conclusive evidence of the approval thereof by the Authorized Officers and the Company; and it is further

**RESOLVED,** that the Authorized Officers be, and hereby are, authorized, directed, and empowered, in the name of and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file, record, and perform under such agreements, instruments, motions, affidavits, applications for approvals or rulings of governmental or regulatory authorities, certificates, or other documents, to pay all expenses, including filing fees, and to take such other actions as in the judgment of the Authorized Officers, shall be necessary, appropriate, advisable, or desirable to prosecute a successful completion of the Chapter 11 Case and to effectuate the restructuring or liquidation of the Company's debts, other obligations, organizational form and structure, and ownership of the Company, all consistent with the foregoing resolutions and to carry out and put into effect the purposes of the foregoing resolutions, and the transactions contemplated by these resolutions, the authority thereunto to be evidenced by the taking of such actions; and it is further

**RESOLVED**, that the Authorized Officers be, and hereby are, authorized, directed, and empowered, on behalf of and in the name of the Company, to take such actions and execute and deliver such documents as may be required or as the Authorized Officers may determine to be necessary, appropriate, advisable, or desirable to carry out the intent and purpose of the foregoing resolutions or to obtain the relief sought thereby, including, without limitation, the execution and delivery of any consents, resolutions, petitions, schedules, lists, declarations, affidavits, and other papers or documents, with all such actions to be taken in such manner, and all such petitions, schedules, lists, declarations, affidavits, and other papers or documents to be executed and delivered in such form as the Authorized Officers shall approve, the taking or execution thereof by the Authorized Officers being conclusive evidence of the approval thereof by the Authorized Officers and the Company; and it is further

**RESOLVED**, that all acts done or actions taken prior to the date hereof by the Authorized Officers or any professionals engaged by the Company with respect to any transactions contemplated by the foregoing resolutions, or otherwise in preparation for or in connection with the Chapter 11 Case, or any proceedings related thereto, or any matter related thereto, be and hereby are, adopted, approved, authorized, ratified, and confirmed in all respects as the acts and deeds of the Company; and it is further

**RESOLVED**, that facsimile, photostatic, or other electronic copies of signatures to this consent shall be deemed to be originals and may be relied on to the same extent as the originals; and it is further

**RESOLVED**, that this consent may be executed in multiple counterparts, all of which, taken together, shall constitute one and the same document, and shall be effective as of the date first written above when signed by all of the members of the Strategic Process Committee set forth below.

[*Remainder of page intentionally left blank*]

**IN WITNESS WHEREOF**, the undersigned, constituting all of the members of the Strategic Process Committee, have executed and delivered this Written Consent effective as of the date first set forth above.

**STRATEGIC PROCESS COMMITTEE**

David Mack

______________________________
David Mack

Susan E. Atkins

______________________________
Susan Atkins

| Fill in this information to identify the case: |
| --- |
| Debtor name BioXcel Therapeutics, Inc. |
| United States Bankruptcy Court for the: DISTRICT OF DELAWARE |
| Case number (if known) ____________ |

☐ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors

12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☐ *Schedule H: Codebtors* (Official Form 206H)
- ☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule* ____________
- ☒ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☒ Other document that requires a declaration Corporate Ownership Statement

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 27, 2026

**X** */s/ Vimal Mehta*
Signature of individual signing on behalf of debtor

Vimal Mehta
Printed name

Chief Executive Officer
Position or relationship to debtor



Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

60400785.1